**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 73**

Docket No. SF-0752-13-0283-I-1

**David R. Ellis,**

**Appellant,**

**v.**

**United States Postal Service,**

**Agency.**

September 9, 2014

Michael Stichler, Santa Barbara, California, for the appellant.

Michael R. Tita, Esquire, Seattle, Washington, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1        The appellant petitioned for review of the initial decision that affirmed the agency's action demoting him from the position of Supervisor, Customer Service, EAS-17, to his former craft position of City Letter Carrier, based on a charge of unacceptable conduct.   For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the initial decision insofar as it found that the agency proved its charge by preponderant evidence, and MITIGATE the penalty to a letter of warning and a geographic reassignment.

BACKGROUND

¶2    The agency demoted the appellant and reassigned him to a different duty station based on one charge of "Unacceptable Conduct – Misrepresentation of Mail Volume Reports." Initial Appeal File (IAF), Tab 5 at 13-15, 26-29. The agency alleged that the appellant intentionally and artificially inflated mail volumes on specified routes on six dates in September and October 2012. *Id.* at 26-27. Among the administrative judge's findings were that: an essential function of a supervisor's duty is to properly calculate and input carriers' caseable mail volume, i.e., mail that a carrier must "work" or "case" by taking the raw mail and putting it into the delivery sequence, the Daily Operations Information System (DOIS), and the agency's electronic database; the category of mail volume the appellant allegedly inflated in DOIS was "flats," which are pieces of mail that are larger than a letter but which are not parcels; the number of flats inputted into DOIS is a function of two sources of information, an automated number and a manual number; it is the duty of a supervisor, such as the appellant, to do a manual count of flats; and "catching" a supervisor inflating caseable flat mail volumes is extremely difficult because there is no independent recordation of the number of caseable flats that flow through a post office on any given day. IAF, Tab 20, Initial Decision (ID) at 2-5.[1] Following a hearing, the administrative judge found that the appellant intentionally misrepresented mail volume reports for the dates referenced in the agency's proposal notice. ID at 9. In so finding, the administrative judge relied on the agency's documentary evidence and witness testimony that the mail volumes recorded and the resulting carrier performance reported by the appellant were "absolutely not plausible," "unheard of," and "out of this world." ID at 5-8.

---

[1] None of these findings appear to be in dispute.

¶3    The appellant has filed a timely petition for review.[2]  He contends that he was denied a full and fair adjudication process, challenges the administrative judge's finding that the agency proved that he intentionally misrepresented mail volumes in DOIS and claims to have new and material evidence to support that challenge, and contends that he was subjected to a disparate penalty compared to other similarly-situated supervisors.  Petition for Review (PFR) File, Tab 1.  Although we find that the appellant has not demonstrated reversible error regarding his first two contentions, we find that the agency's penalty must be mitigated because the evidence indicates that the appellant was punished disparately compared to a similarly-situated supervisor.

## ANALYSIS

The appellant has failed to show that he was denied a full and fair adjudication process.

¶4    A petition for review will be granted when, among other reasons, the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.  5 C.F.R. § 1201.115(c).  The appellant makes a number of allegations in this regard, namely, that the administrative judge:  was sick prior to and during the hearing; did not want to come to Portland, Oregon, for the hearing or stay there long because of his illness; and closed the hearing after a single day and ordered the parties to summarize their case in no more than 10 pages.[3]  PFR File, Tab 1 at 5-6.  None of these allegations demonstrates that the administrative judge failed

---

[2] The agency has responded to the appellant's petition for review and he has replied to the agency's response.  Petition for Review File, Tabs 3, 4.

[3] The appellant also alleged unethical conduct by agency officials during settlement or mediation discussions.  *See* PFR File, Tab 1 at 4.  These allegations do not provide any basis for reversing, modifying, or vacating the initial decision.

to comply with required procedures or abused his discretion. For example, it was the appellant's representative who suggested that there be a 10-page limit on the length of written closing arguments. Hearing Compact Disc (HCD), 15:54 file at 52:25-53:45.[4]

The Operating Instructions attached to the appellant's petition for review are neither new nor material.

¶5    On review, the appellant has attached the Portland District's Operating Instructions for Piece Count Recording System and Required Delivery Handling, which were not part of the record below. PFR File, Tab 1 at 35-43. The appellant claims that this case is all about the proper counting of flat mail and that the Operating Instructions show that the charge against him was without merit. *Id.* at 6. He contends that the agency asserted, and the administrative judge believed, that the only proper way to count flats was by linear measurement, i.e., one foot of flats is equal to 115 pieces of mail. *Id.* at 7. He argues that the Operating Instructions show a preference for a piece count of flat mail and has attached several additional exhibits showing how linear measurement of flat mail, particularly mailings in political campaigns, can result in wildly inaccurate mail counts. *Id.* at 8-16, 45-54.

¶6    The Board's regulations provide that it will grant a petition for review when, among other reasons, new and material evidence is available that, despite the petitioner's due diligence, was not available when the record closed. 5 C.F.R. § 1201.115(d). Evidence is "material" when it is of sufficient weight to warrant an outcome different from that of the initial decision. 5 C.F.R. § 1201.115(a)(1). The appellant claims that the Operating Instructions were difficult to obtain from

---

[4] The Hearing Compact Disc contains 10 sound (.wma) files, which include the starting time in the file name. For example, the first file includes "10:26" in the file name, the fourth file includes "12:58" in the file name, and the eighth file includes "14:52" in the file name.

the agency, despite his use of the Privacy and Freedom of Information Acts, as the agency was reluctant to give them to him. PFR File, Tab 1 at 8. It was not necessary, however, for the appellant to use the Privacy and Freedom of Information Acts to obtain the Operating Instructions. He could have used the Board's discovery procedures to request them and, if the agency failed to provide them, could have filed a motion to compel. *See* 5 C.F.R. §§ 1201.73-1201.74. We conclude that the appellant has made no showing that the Operating Instructions concerning the proper method of counting flat mail were unavailable despite his due diligence during the regional office proceeding.

¶7         Even if the Operating Instructions could be considered "new," they are not material, i.e., they do not warrant a different outcome. Neither the administrative judge nor the agency stated that linear measurement was the only appropriate way to count flats. The proposing official testified that it was proper to use a piece count instead of a linear measurement and conversion when the mailer provided a piece count. *See* HCD, 10:44 file at 35:40-36:30. The administrative judge acknowledged the appellant's statement that he used a piece count when one was available, and used a linear measurement and conversion when a piece count was not available, and stated that counting flat mail "is *primarily* done by taking a linear measurement of mail and converting the linear measurement to a piece count." ID at 4, 6 (emphasis added). The dispute was thus not about *how* to count the flat mail but whether the appellant had accurately counted the flat mail. It was not possible to establish whether the appellant had accurately counted the flat mail with objective documentary evidence because he did not retain the slips of paper on which he says he recorded the piece counts. *See* HCD, 14:52 file at 38:35-41:15 (the appellant's testimony). Accordingly, the administrative judge relied on circumstantial evidence in concluding that the appellant intentionally misrepresented mail volume reports for the dates referenced in the proposal notice.

<u>The agency was required to prove that the appellant knowingly inputted incorrect information into DOIS with an intent to deceive.</u>

¶8    The agency charged the appellant with "Unacceptable Conduct - Misrepresentation of Mail Volume Reports."  IAF, Tab 5 at 26.  After describing the alleged misconduct, the proposal notice stated that the appellant's actions violated several sections of the Employee and Labor Relations Manual, including a provision that states that 18 U.S.C. § 1001, which it characterized as prohibiting fraud or false statements in a government matter, applies to U.S. Postal Service employees.  *Id.* at 27-28.

¶9    The Board has stated that the criteria for proving misrepresentation are the same as those for proving falsification.  *See Guerrero v. Department of Veterans Affairs*, 105 M.S.P.R. 617, ¶ 9 (2007); *Gustave-Schmidt v. Department of Labor*, 87 M.S.P.R. 667, ¶ 9 n.2 (2001).  Considering that the agency cited 18 U.S.C. § 1001, which makes it a criminal offense to knowingly and willingly make any materially false, fictitious, or fraudulent statement or representation as to any federal government matter, the agency was required to prove the elements of falsification.  To sustain a falsification charge, the agency must prove by preponderant evidence that the employee knowingly supplied incorrect information with the intention of defrauding, deceiving, or misleading the agency.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1305 (Fed. Cir. 2002).  Because there is seldom direct evidence on the issue, circumstantial evidence must generally be relied upon to establish intent.  *Naekel v. Department of Transportation*, 782 F.2d 975, 978 (Fed. Cir. 1986).  Although the Board may consider plausible explanations for an appellant's provision of incorrect information in determining whether a misrepresentation was intentional, the absence of a credible explanation for the misrepresentation can constitute circumstantial evidence of an intent to deceive.  *Crump v. Department of Veterans Affairs*, 114 M.S.P.R. 224, ¶ 6 (2010).  After considering the pertinent evidence, the administrative judge concluded that "the appellant intentionally

misrepresented mail volume reports for the dates referenced in the proposal notice." ID at 9.

<u>The appellant has failed to show that the administrative judge erred in finding that he intentionally misrepresented mail volumes.</u>

¶10    The Board will grant a petition for review when, among other reasons, it is shown that the initial decision contains erroneous findings of material fact. 5 C.F.R. § 1201.115(a). The Board will not disturb an administrative judge's findings when the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing, and can overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe*, 288 F.3d at 1301. Our review shows that the administrative judge complied with the requirements of *Crosby* and *Broughton* in making detailed findings of fact and credibility determinations and that he implicitly relied on the demeanor of the witnesses, and we discern no reason to disturb those findings.

<u>The demotion penalty must be mitigated because the appellant showed that he was punished more harshly than a similarly-situated supervisor.</u>

¶11    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). One of the relevant factors is the consistency of the penalty with those imposed on other employees for the same or similar offenses. *Id.* at 305. If an appellant shows that there is enough similarity between both the nature of the misconduct and other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently, then

the agency must prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012); *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010).  If the agency fails to meet its burden, the Board will not automatically reduce the penalty to the same penalty imposed on the comparator employee(s).  *Lewis*, 113 M.S.P.R. 657, ¶¶ 17-18.  If the circumstances cited by the agency justify a harsher penalty on the appellant than on the comparator(s), but not the penalty imposed by the agency on the appellant, the Board will mitigate the penalty to the maximum reasonable penalty.  *Id.*

¶12      In his petition for review, the appellant reiterates his contention that he was treated disparately compared to other EAS supervisors, including RLB,[5] who had engaged in the same misconduct.  PFR File, Tab 1 at 24-27.  The record reflects that the circumstances surrounding the appellant's offense and disciplinary process and those of RLB are almost identical.  Both were EAS supervisors charged with essentially the same offense, the appellant with "Misrepresentation of Mail Volume Reports" and RLB with "Misrepresentation of Employee Work Records"; both were accused of intentionally entering incorrect information into the DOIS database so as to make their employees appear more productive than they were and thereby bolster their own image as supervisors; the deciding official was the same in both cases; and the demotion/reassignment penalty imposed on the appellant occurred just a few months after the letter of warning/reassignment imposed on RLB.  *Compare* IAF, Tab 5 at 13-15, *with* Tab 12 at 11-15.  Accordingly, it was the agency's burden to prove by preponderant evidence that it had a legitimate reason for the difference in treatment.

¶13      If we considered only the testimony of the agency witnesses at the hearing, then we might conclude that the agency had met its burden of justifying the

---

[5] We are using this employee's initials rather than the employee's full name.

difference in penalties. The appellant's second-level supervisor, and the "concurring official" in his adverse action, testified that the misconduct committed by RLB and three other supervisors in RLB's office was "completely different" from the appellant's misconduct.[6] HCD, 13:12 file at 5:35-10:15. He said that they noticed a "tab" in DOIS with a drop-down menu that appeared to allow them to give time credit to carriers for various time-consuming things that occurred during their routes. *Id.* He said that the supervisors' intent was to give an accurate picture of what happened on the carriers' routes, and that they did not realize that inputting this information into DOIS was wrong. *Id.* He likened the difference between the misconduct by those supervisors and the appellant's misconduct as akin to the difference between manslaughter and murder. *Id.* Similarly, the deciding official testified that RLB believed that RLB was properly giving credit to the carriers and that, although RLB later understood that what RLB had done was wrong, RLB had not understood this at the time of the misconduct. HCD, 13:55 file at 9:10-10:45.

¶14     This hearing testimony cannot be squared with the deciding official's letter of decision in RLB's case and the underlying proposal notice, which, like the appellant's, charged RLB with "Misrepresentation" and cited 18 U.S.C. § 1001, the statute that criminalizes intentional falsification of government records. *See* IAF, Tab 12 at 11-15. That the deciding official sustained the Misrepresentation charge against RLB necessarily meant that she was finding that RLB had an intent to deceive.

---

[6] The administrative judge declined to treat the other supervisors in RLB's office as comparators because their cases were resolved by settlement. ID at 11 n.7; *see Hulett v. Department of the Navy*, 120 M.S.P.R. 54, ¶ 7 (2013) (except when there are allegations of discrimination in settlement practices, the Board will not compare a penalty resolved through settlement to other actions).

¶15    In rejecting the appellant's assertion of disparate penalties, the administrative judge cited the appellant's "'arrogant' denial of all responsibility and lack of remorse for having recorded wholesale inflated mail volumes that did not actually exist." ID at 11. As above, however, this comparison of the appellant to RLB is not consistent with the deciding official's decision letter, in which she wrote that RLB "did not accept responsibility for having misrepresented the time allotted for carrier duties when given the opportunity during questioning." IAF, Tab 12 at 11.

¶16    We find that the description of RLB's misconduct in the decision letter, rather than the agency's post hoc re-characterization, more accurately reflects the nature of the charged offense in RLB's case. The decision letter concludes, contrary to the cited testimony, that RLB intentionally falsified official records regarding RLB's carriers' job performance and that RLB failed to acknowledge and express remorse for that misconduct. *See id.* Accordingly, we find that the agency failed to prove by preponderant evidence that it had legitimate reasons for punishing the appellant more harshly than it punished RLB. Moreover, we see no justification for punishing the appellant significantly more harshly than RLB was punished. We therefore conclude that the maximum reasonable penalty in this case is the same type of punishment imposed on RLB—a letter of warning, in lieu of a 14-day suspension, and a geographic reassignment within the local commuting area.

## ORDER

¶17    We ORDER the agency to reinstate the appellant to his EAS-17 position and to restore him effective February 23, 2013, and to substitute a letter of warning in lieu of a 14-day suspension for the reduction in grade.[7] *See Kerr v.*

---

[7] As discussed above, the agency may impose a geographic reassignment within the local commuting area, but is not required to do so.

*National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶18     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶20     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶21     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶22　　　This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and

that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63)
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.